UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN KREUZIGER, individually
and on behalf of all others similarly
situated,

Plaintiff,

v.

MILWAUKEE COUNTY,
And MILWAUKEE METROPOLITAN
SEWERAGE DISTRICT,

Defendants.

Case No. 19-CV-1747

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, Brian Kreuziger, through his attorneys, Galanis, Pollack, Jacobs & Johnson, S.C., on behalf of himself and all others similarly situated, and for his Complaint against Defendants, Milwaukee County and Milwaukee Metropolitan Sewerage District, states as follows:

### INTRODUCTION

1. This is a collective and class action brought by Plaintiff, Brian Kreuziger, on behalf of himself and all other similarly situated riparian owners with property located upon the Milwaukee River within a direct proximity of the Estabrook Dam. Kreuziger, like all other similarly situated riparian owners has suffered a devaluation of his property value, loss of water use, increased risk of flooding, extensive costs for removing docks, boat houses, and seawalls and loss of other quantifiable uses.

2. Milwaukee County between 1937 and 1938, built the Estabrook Dam with 10 retractable gates and a fixed crest spillway. For over 70 years the water level was maintained by

1

the Estabrook Dam at a fixed level from the inception of the Dam until a DNR nuisance order was issued in 2009.

3. The Milwaukee Metropolitan Sewerage District purchased a 45.7-acre parcel at Estabrook Park for $1.00 in 2017 for the purpose of demolishing Estabrook Dam. Much of the property was returned to Milwaukee County for park use at the time of the sale. The land where the Estabrook Dam was located was owned and operated by Milwaukee Metropolitan Sewerage District at all relevant times herein.

4. Pursuant to Notice of Claims Wisconsin Statute §893.80, the Plaintiff, Brian Kreuziger, and forty-six (46) other similarly situated riparian owners with property located upon the Milwaukee River, filed class action claims on November 5, 2018. On June 28, 2019, the claims were denied in full by Milwaukee County Department of Administrative Services.

## JURISDICTION & VENUE

5. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, this action being brought under 42 U.S.C. § 1983. Pursuant to the ruling in *Knick v. Township of Scott, Pennsylvania*, 2019 WL 2552486 (U.S.), there is no requirement for plaintiffs to exhaust all state court remedies before filing this takings claim in federal court.

6. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper pursuant to 28 § 1391(b) and (c) in the U.S. District Court for the Eastern District of Wisconsin because a substantial part of the events or omissions giving rise to the claims occurred within the district and both defendants are located and operate within the

district.

## PARTIES

8. Plaintiff, Brian Kreuziger and other situated like him (hereinafter "Plaintiff") are adult residents, who are riparian owners with property located upon the Milwaukee River or near the Milwaukee River within a direct proximity of the Estabrook Dam.

9. Defendant, Milwaukee County is the former owner and operator of Estabrook Dam with principal offices located at 901 N. Ninth St., Milwaukee, WI 53233.

10. Defendant, Milwaukee Metropolitan Sewerage District (hereinafter "MMSD") is a regional government agency within the City of Milwaukee established by state law. MMSD is an interested party and the current owner and operator of Estabrook Dam with principal offices located at 260 W Seeboth St., Milwaukee, WI 53204.

## GENERAL ALLEGATIONS

11. That the area of the current Estabrook Dam previously contained a limestone out-cropping slowing the water-flow at the onset of a S-Curve (Oxbow Curve) in the Milwaukee River, creating an upstream lake.

12. That the limestone out-cropping ledge was removed on or around 1933.

13. After removal of the limestone out-cropping ledge, the upstream water levels were significantly altered and created uncontrollable water levels and unpredictable flooding.

14. That Milwaukee County initiated a channel project, thereby eliminating the S-curve (a/k/a oxbow curve) previously in place as a remediation remedy to the problems created in removing the limestone out-cropping ledge.

15. That the channel project failed to address or remediate the water level reduction and flooding problems.

16. That between 1937 and 1938, Milwaukee County built the Estabrook Dam with 10 retractable gates and a fixed crest spillway created in the former S-Curve.

17. That the Estabrook Dam was created without a Fish Passage in the Dam itself and the fish passage was intended through the fixed crest spillway.

18. That the primary purpose of the dam was to control the water flow to prevent flooding of upstream properties. See Kreuziger Affidavit para. 4.

19. That the installation of the Estabrook dam recreated the water levels to the recreational heights previously in place by the limestone out-cropping ledge. See Kreuziger Affidavit para. 4.

20. That for over 71 years from the inception of the Estabrook Dam and the DNR Order in 2009 for the gates to remain open, the riparian owners residing on the Milwaukee River utilized the water for numerous recreational activities. See Kreuziger Affidavit para. 3.

21. Members of the Riparian Owner Class relied upon the water level created and maintained by the Estabrook Dam when purchasing the real estate. See Kreuziger Affidavit para. 3.

22. Members of the Riparian Owner Class relied upon the water level created and maintained by the Estabrook Dam when building permanent structures located on said water.

23. Members of the Riparian Owner Class relied upon the water level created and maintained by the Estabrook Dam when using the water. See Kreuziger Affidavit para. 3.

24. Milwaukee and Glendale Municipalities have relied upon the water levels when determining the property taxes for properties located upon the water.

25. That if the Estabrook Dam were to have been repaired, that this pleading would have had no consequence for members of the Riparian Owner Class as the water levels

previously relied upon would be maintained.

26. That the removal of the Estabrook Dam eliminated the ability to control the water levels of the Riparian Owner Class. See Kreuziger Affidavit para. 8.

27. That the removal of the Estabrook Dam resulted in a decrease of the water levels of the Riparian Owner Class by a seasonal level of 3 feet. See Kreuziger Affidavit para. 9.

28. That the physical removal of the Estabrook Dam remains on-going through the date of this pleading as underwater structure remains in place.

29. That a decrease of 3 feet would eliminate or significantly reduce the water front property rights of the Riparian Owner Class. See Kreuziger Affidavit para. 11.

30. That the depreciation of property values alone would be at least 20% of the current appraised values of the 47 properties.

31. The calculation based upon the current property values, the 47 properties located within the effected proximity of the Estabrook Dam and the 20% depreciation results in a minimum devaluation of $3,041,176.40 in property values.

32. That the average cost to each class member to remediate existing structures and landscaping $31,500.00 per riparian property owner, or an estimated amount of $1,480,500.00 in remediation costs.

33. The impact of a 20% reduction in property values will also have a direct impact on the tax assessment and property tax revenue for the respective municipalities.

34. Wisconsin Water Law dictates that where an artificial outlet is constructed and maintained for 40 years, the riparian owners have a reasonable expectation of the water level maintained for that time period, and the dam owner has no right to reduce the water level so as to impair the value of the riparian property.

35. Wisconsin Water Law requires that the dam owner shall be liable for damages to the shores for the water level at the lowest point at which the water level was during the period.

36. That the reduced water level results in unhealthy shores, marshy land and unusable land. See Kreuziger Affidavit para. 13, Exhibit B, C & D.

37. That the MMSD as the remover of the dam is responsible for the water level reduction to the riparian owners and the consequence of the dam removal.

38. That Milwaukee County as the previous owner and current owner of the Dam is responsible for the water level reduction to the riparian owners and the consequence of the dam removal.

39. That the MMSD as the remover of the Dam is responsible for damages caused to the property of the riparian owners as a direct consequence of the dam removal.

40. That Milwaukee County as the previous owner and current owner of the Dam is responsible for damages caused to the property of the riparian owners as a direct consequence of the dam removal.

41. That the MMSD as the remover of the Dam is responsible for remediation of existing structures, property, landscaping of the riparian owners as a direct consequence of the Dam removal.

42. That Milwaukee County as the previous owner and current owner of the Dam is responsible for remediation of existing structures, property, landscaping of the riparian owners as a direct consequence of the Dam removal.

43. That the MMSD as the previous owner of the Dam is responsible for damage from flooding as a direct consequence of the Dam removal.

44. That Milwaukee County as the previous owner and current owner of the Dam is

responsible for damage from flooding as a direct consequence of the Dam removal.

45. That the MMSD as the previous owner of the Dam is responsible for environmental impact damage as a direct consequence of the Dam removal.

46. That Milwaukee County as the previous owner and current owner of the Dam is responsible for environmental impact damage as a direct consequence of the Dam removal.

## CLASS ALLEGATIONS

47. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated (hereinafter referred to as "the Riparian Owner Class").

48. Plaintiff proposes the following Riparian Owner Class definition, subject to amendment as appropriate:

> All 47 riparian owners with property located upon the Milwaukee River within a direct proximity of the Estabrook Dam, who have relied upon the water level, created and maintained by the Estabrook Dam, to not impair the value of their riparian property, have suffered loss of water use, have an increased risk of flooding, incurred costs for removing docks, boat houses, and seawalls and suffered loss of other quantifiable uses.

Collectively, all these riparian owners will be referred to as "Riparian Owner Class member." Plaintiff represents, and is a member, of the Riparian Owner Class.

49. This Class Action Complaint seeks money damages.

50. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

51. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Riparian Owner Class members.

7

52. As a riparian owner with property located upon the Milwaukee River within a direct proximity of the Estabrook Dam, and has suffered a devaluation of his property value, loss of waterfront, increased risk of flooding, and loss of other unquantifiable uses, Plaintiff assets claims that are typical of each Riparian Owner Class member. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interest which are antagonistic to any member of the Class.

53. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state statutes, including claims under the Wisconsin Constitution and United States Constitution.

54. A class action is the superior method for the fair and efficient adjudication of this controversy.

55. Defendants have acted on grounds generally applicable to the Class, thereby making declaratory relief with respect to the Class as a whole appropriate.

## FIRST CLAIM FOR RELIEF
### Petition for Inverse Condemnation
### (Plaintiff on behalf of himself and the Riparian Owner Class)

56. Plaintiff repeats and realleges the averments made herein in paragraphs one (1) through fifty-five (55).

57. The United States and Wisconsin Constitutions require payment of just compensation for private property taken for public use. The Fifth Amendment to the United States Constitution provides in relevant part: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Article I, Section 13 of the Wisconsin Constitution provides: "The property of no person shall be taken for public use without just compensation

8

therefor." Wis. Const. art. I, § 13.

58. In order to maintain an unconstitutional takings claim, four factors must be demonstrated: (1) a property interest exists; (2) the property interest has been taken; (3) the taking was for public use; and (4) the taking was without just compensation. *Wis.Med.Soc'y. v. Morgan*, 328 Wis2d 469, ¶ 38, 787 N.W.2d 22 (citing *Wis.Retired Teachers Ass'n v. Emp.Tr.Funds Bd.*, 207 Wis2d 1, 18-24, 558 N.W.2d 83 (1997)).

59. That the Riparian Owner Class has a property right to the reasonable use of the water at the level previously maintained since the area was settled.

60. That the defendants orchestrated the removal of the Estabrook Dam and that the Dam has been removed.

61. The removal of the Estabrook Dam has deprived the Riparian Owner Class members of substantially all beneficial uses of their property rights by suffering a devaluation of property value, loss of water use, increased risk of flooding, costs for removing docks, boat houses, and seawalls and loss of other quantifiable uses.

62. The removal of the Riparian Owner's property was a taking for a public use.

63. The removal of the Riparian Owner's property was a taking without just compensation to the Riparian Owner Class.

64. That no compensation has been provided to the Riparian Owner Class members as of the date of the complaint after the Notice of Claim were denied without payment by both defendants.

## SECOND CLAIM FOR RELIEF
### Petition for Unconstitutional Taking Under The Wisconsin and United States Constitutions
### (Plaintiff on behalf of himself and the Riparian Owner Class)

65. Plaintiff repeats and realleges the averments made herein in paragraphs one (1) through sixty-four (64).

66. Article I, Section 13 of the Wisconsin Constitution provides that "the property of no person shall be taken for public use without just compensation."

67. The U.S. Constitution, Amendment V provides in part: "nor shall private property be taken for public use without just compensation."

68. That the Riparian Owner Class members own constitutionally protected property rights to the water use and levels.

69. That the construction of the Dam resulted in maintaining the water level previously relied upon from the natural granite out-cropping.

70. That the construction of the Dam reinstituted the water level that was in existence prior the removal of the natural granite out-cropping.

71. That the Riparian Owner Class acquired an absolute right to have the flowage and consequent higher water levels maintained when both were there prior to the construction of the Estabrook Dam.

72. Alternatively, the Riparian Owner Class acquired a reciprocal right to have the flowage and consequent higher water levels maintained when both were the result of Estabrook Dam.

73. That the natural condition prior to the construction of the Estabrook Dam was the higher water levels and creation of the recreational lake.

74. That the artificial condition originally created by Estabrook Dam, through a lapse

of time, has become, "a natural condition."

75. That the Riparian Owner Class benefit from the creation of the body of water by Estabrook Dam and are entitled to compensation for the removal.

76. That the Riparian Owner Class are damaged by the removal of the body of water that was in existence prior to the construction of the Estabrook Dam.

77. That the Riparian Owner Class has a property right to the reasonable use of the water at the level previously maintained since the area was settled.

78. That the intended damage to the Riparian Owner Class properties constitutes a taking that requires just compensation.

79. Even if the damage is unintended, the Riparian Owner Class properties constitutes a taking that requires just compensation.

80. The Defendants have permanently deprived the Riparian Owner Class of use of the river by removing the dam, which was done for a public purpose.

81. The defendants had no right to lower the water below the level of the lowest point at which it has been during the period since the construction of the dam. *Smith v. Youmans*, 96 Wis. 103, 70 N.W. 1115 (1897).

82. The fair market value of the Riparian Owner Class members properties that have been taken is $3,041,176.40.

83. The temporary and permanent takings of the Riparian Owner Class members property rights without compensation constitute unconstitutional takings for purposes of the Wisconsin and United States Constitutions.

## THIRD CLAIM FOR RELIEF
### Petition for Regulatory Taking Under The Wisconsin and United States Constitutions
### (Plaintiff on behalf of himself and the Class

84. Plaintiff repeats and realleges the averments made herein in paragraphs one (1) through eighty-two (82).

85. Under both Article I, Section 13 of the Wisconsin Constitution and the United States Constitution, Amendment V, a restriction of property use without physical invasion of property may be a compensable taking.

86. The removal of the Estabrook Dam has deprived the Riparian Owner Class members of substantially all beneficial uses of their property rights by suffering a devaluation of property value, loss of water use, increased risk of flooding, costs for removing docks, boat houses, and seawalls and loss of other quantifiable uses.

87. The removal of the Estabrook Dam and substantial devaluation of the Riparian Owner Class members property value, loss of water use, increased risk of flooding, costs for removing docks, boat houses, and seawalls and loss of other quantifiable uses constitutes a regulatory taking for which the Plaintiff is entitled to compensation under the Wisconsin and United States Constitutions.

## TRIAL BY JURY

88. Plaintiff is entitled to and hereby demands a trial by jury. U.S. Const. Amend. 7; Fed. R. Civ. Pro. 38.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. As a result of violations of the Wisconsin Constitution and United States

Constitution, Plaintiff seeks for himself and the Riparian Owner Class damages from the Defendants, jointly and severally in the amount of $4,521,676.40.

B. An award of attorneys' fees and costs to counsel for Plaintiff and the Riparian Owner Class;

C. That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Riparian Owner Class;

D. That the Court grants such other and further relief as may be just and proper.

Dated this 27th day of November, 2019.

GALANIS, POLLACK, JACOBS & JOHNSON, S.C.

By: _____
JOSHUA J. BRADY
WI State Bar No. 1041428

ATTORNEYS FOR PLAINTIFFS
AND THE CLASS

839 N. Jefferson Street, Suite 200
Milwaukee, WI 53202
(414) 271-5400 (Telephone)
(414) 271-5571 (Fax)