# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRIAN KREUZIGER,

            Plaintiff,

v.

MILWAUKEE COUNTY and
MILWAUKEE METROPOLITAN
SEWERAGE DISTRICT,

            Defendants.

Case No. 19-CV-1747-JPS

**ORDER**

**1.  BACKGROUND**

On November 27, 2019, Plaintiff Brian Kreuziger ("Plaintiff") brought this action against Defendants Milwaukee County and Milwaukee Metropolitan Sewerage District ("Defendants"). (Docket #1). Plaintiff filed a complaint on both his behalf and on behalf of a purported class of similarly situated individuals pursuant to Federal Rule of Civil Procedure ("FRCP") 23. (*See generally id.*) Plaintiff alleges that Defendants violated both his property rights and the property rights of the purported class members under both federal and Wisconsin law. (*Id.* at 8–12; Docket #15 at 1).

Now before the Court is Plaintiff's motion for class certification, (Docket #23), and Defendants' motion to both (1) bar Plaintiff's expert's Rule 26 disclosures and (2) prohibit Plaintiff's expert from offering testimony or opinions pursuant to Federal Rule of Evidence ("FRE") 702, (Docket #30). For the reasons discussed herein, the Court will deny without prejudice Plaintiff's motion for class certification, (Docket #23), and will

deny Defendants' motion to bar Plaintiff's expert's disclosures pursuant to FRCP 26, (Docket #30). The Court will address Defendants' request that the Court preclude Plaintiff's expert from testifying at a later date, should Defendants file a motion to disqualify Plaintiff's expert or a motion in limine.

## 2. RELEVANT FACTS

### 2.1 Plaintiff and Class Claims

Plaintiff and the members of the purported class own properties located upon the Milwaukee River in Milwaukee County, Wisconsin. (Docket #1 at 1). Plaintiff claims that his property and the properties of the purported class members are located "within a direct proximity" of the since-removed Estabrook Dam. (*Id.*) The Estabrook Dam was built between 1937 and 1938. (*Id.* at 4). In 2009, the Wisconsin Department of Natural Resources issued an order directing that the Estabrook Dam's ten retractable gates remain open. (Docket #24 at 3). In 2017, Defendant Milwaukee Metropolitan Sewerage District ("MMSD") purchased the land where the Estabrook Dam was located. (*Id.*) Ultimately, MMSD completed its demolition of the dam in 2018. (Docket #27 at 2.)

Plaintiff alleges that he and the fellow purported class members relied upon the water level created and maintained by the Estabrook Dam. (Docket #24 at 3). Plaintiff claims that MMSD's removal of the dam has caused, among other things, devaluation of property, property damage, an increased risk of flooding, and the loss of other quantifiable uses. (Docket #1 at 1).

### 2.2 The Parties' Discovery Plan as to Expert Witnesses

On February 4, 2020, the parties submitted a joint report and discovery plan pursuant to FRCP 26(f). (Docket #15). Therein, the parties

Page 2 of 12
Case 2:19-cv-01747-JPS   Filed 03/22/21   Page 2 of 12   Document 38

agreed that Plaintiff would "disclose expert witnesses, if any, with reports by May 13, 2020" and that Defendants would "disclose expert witnesses, if any, with reports, by July 24, 2020." (*Id.* at 2). On May 13, 2020, the parties amended the aforementioned deadlines via a joint stipulation. (Docket #26). Pursuant to that stipulation, Plaintiff had until June 15, 2020 to disclose his expert witness, if any, with reports. (*Id.* at 1).

On June 15, 2020, Plaintiff's counsel sent Defendants' counsel an e-mail containing an "expert witness disclosure and content of the [expert's] report." (Docket #32-5 at 1). Plaintiff also attached the curriculum vitae of the expert, Dr. Russell Kashian ("Kashian"), as well as an article that Kashian co-authored. (Docket #32-6, #32-7). In Plaintiff's counsel's e-mail, he stated that Kashian was finalizing the remaining components of the report and that Plaintiff's counsel would have "an idea on the timeline in the next 24 hours." (Docket #32-5 at 1).

On June 16, 2020, Defendants' counsel called Plaintiff's counsel to discuss the e-mail. (Docket #32 at 2). Someone at Plaintiff's counsel's office answered the phone and informed Defendants' counsel that Plaintiff's counsel was unavailable but that he would return the call. (*Id.*) On July 28, 2020, because Plaintiff's counsel neither returned Defendants' counsel's call nor provided him with the remaining components of Kashian's report, Defendants' counsel filed a motion to bar Plaintiff's expert. (Docket #30). On September 4, 2020, Plaintiff's counsel finally responded to Defendants' motion and served Defendants' counsel with the remaining components of Kashian's expert report. (Docket #35 at 3).

### 3. DEFENDANTS' MOTION REGARDING PLAINTIFF'S EXPERT

Defendants ask that the Court find that Plaintiff's counsel violated FRCP 26[1] and, thus, sanction Plaintiff pursuant to FRCP 37(c) by precluding Plaintiff from using Kashian to provide evidence. (Docket #31). Defendants also state that Kashian's testimony is inadmissible pursuant to FRE 702 because Kashian failed to provide any facts or data relevant to this case in his *initial* June 15, 2020 report. (*Id.* at 6–8). In light of Defendants' receipt of Kashian's supplemental report, dated September 4, 2020, Defendants request that the Court permit them to address the admissibility of Kashian's testimony or his expert opinion(s) in this case, should the Court permit Plaintiff's untimely Rule 26 disclosures. (*See* Docket #36 at 12–13).

Plaintiff's counsel responded that his disclosures were timely. (Docket #35).[2] He argued that because the Court did not adopt the parties'

---

[1] FRCP 26(a)(2) requires a party to disclose the following for each expert witness who will be used to present evidence at trial: (1) a complete statement of the opinions the witness will express and his or her basis for the same; (2) the facts or data the witness relied upon in forming his or her opinions; (3) any exhibits that the witness will use to summarize or support his or her opinions; (4) the witness's qualifications, including a list of all publications he or she has written in the last ten years; (5) a list of all other cases that the witness testified as a witness in within the last four years; and (6) a statement addressing the witness's compensation for his or her testimony and study in the relevant case.

[2] Plaintiff's counsel also argues that Defendants' counsel failed to "meet and confer" in accordance with the Court's Trial Scheduling Order ("TSO"). Surely, the TSO memorializes the Court's expectation that the parties engage in an "actual discussion with suggestions for genuine compromise," prior to filing pre-trial motions. (Docket #17 at 5). However, this language does not excuse Plaintiff's counsel's failure to return opposing counsel's phone call. Defendants' counsel waited over one month before submitting the motion to bar Plaintiff's expert. Notably, *Plaintiff's counsel* never got around to returning Defendants' counsel's phone call during that time. Further, at the outset of this saga, Plaintiff's counsel indicated that he would have a "timeline" concerning the outstanding components in approximately 24 hours. Nevertheless, he never reached out to Defendants' counsel regarding the aforementioned "timeline," leaving opposing counsel

joint Rule 26(f) plan, nor the parties' stipulation to amend their Rule 26(f) plan, and because the TSO fails to include an expert disclosure deadline, FRCP 26(a)(2)(D)(i) set the applicable deadline for the parties to disclose their respective expert witnesses. Pursuant to FRCP 26(a)(2)(D)(i) "*[a]bsent a stipulation or court order*, the disclosures must be made at least 90 days before the date set for trial or for the case to be ready for trial[.]" (emphasis added). Plaintiff averred that his incomplete disclosure on June 15, 2020 and his submission of the remaining components on September 4, 2020, were, in fact, timely, as trial was previously set for December 7, 2020 (i.e., more than 90 days after Plaintiff's counsel submitted Kashian's materials to opposing counsel).

Plaintiff's counsel's argument is unavailing, as it overlooks the significance FRCP 26(a)(2)(D)(i) places on stipulations and court orders. The parties set the deadline by which they were to disclose their expert witnesses. In this case, Plaintiff had to disclose his expert witness by June 15, and he failed to comply with that deadline.

Undercutting his own argument that his submissions were timely, Plaintiff's counsel then claimed that he was "substantially justified" in failing to submit a complete disclosure and such failure to do so was "harmless." *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness . . . at trial . . . unless the failure was substantially justified or is harmless."); *Salgado v. General Motors, Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("[t]he sanction of exclusion

---

without any sense of direction regarding this matter. Plaintiff's counsel cannot pin his failures to correspond or confer on Defendants' counsel.

[for violation of Rule 26] is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless."). Plaintiff's counsel argued that he was substantially justified by not providing a complete report as outlined by Rule 26 due to the COVID-19 pandemic and Governor Evers's Safer at Home orders. (Docket #35 at 4).

Notably, Plaintiff's counsel did not provide such an explanation until he responded to Defendants' counsel's motion on September 4, 2020. (*Id.*) In fact, on June 15, 2020, when Plaintiff's counsel submitted initial information about Kashian to Defendants, he failed to inform Defendants' counsel that Kashian would need additional time to conduct research. Even if the COVID-19 pandemic was an obstacle to Kashian's research,[3] there is nothing on the record (other than one statement in Plaintiff's response brief) to support that proposition. As Defendants' counsel pointed out, Plaintiff's counsel did not submit a declaration from Kashian explaining the alleged justification for the delay. The Court finds that Plaintiff's counsel's failure to disclose in accordance with Rule 26(a) is not substantially justified. The Court also takes umbrage with Plaintiff's counsel's latent argument that the pandemic precluded his timely submission, or from conferring with opposing counsel regarding Kashian. The COVID-19 pandemic has had devastating consequences throughout this Country and the world; a lawyer should not attempt to use the pandemic as an excuse when he or she fails

---

[3] Defendants' counsel points out that on May 13, 2020, the parties managed to extend Plaintiff's deadline to disclose experts during the pandemic. The parties entered into this stipulation almost two months *after* Governor Evers issued the first Safer at Home Order, which became effective as of March 25, 2020. *See Gov. Evers Emergency Order No. 12, Safer at Home Order*, Wis. Dep't Pub. Health (Mar. 24, 2020), *available at* https://evers.wi.gov/Documents/COVID19/EMO12-SaferAtHome.pdf (last visited Mar. 14, 2021).

to adequately fulfill his or her professional obligations, in particular, as an officer of the Court.

Regardless, the Court does find that Plaintiff's counsel's failure to disclose Kashian's report in its entirety to be harmless. On September 16, 2020, the Court suspended all dates and deadlines in this case and has not yet rescheduled the same. Thus, at this juncture, the Court determines that Plaintiff's failure to timely disclose Kashian and his report was ultimately harmless and not prejudicial to Defendants. To the extent Defendants seek to prohibit Kashian from offering testimony and/or his expert opinion(s) in this case pursuant to FRE 702 based on Kashian's completed report, the Court will address such concerns via either a motion to disqualify Kashian as an expert witness or a motion in limine ahead of trial.

**4. PLAINTIFF'S MOTION TO CERTIFY RULE 23 CLASS**

Next, the Court addresses Plaintiff's motion to certify a class pursuant to FRCP 23. (Docket #23). Plaintiff asks the Court to certify the following class:

> All forty-seven riparian owners with property located adjacent to the Milwaukee River within a direct proximity of the Estabrook Dam, who have relied upon the water level, created and maintained by the Estabrook Dam, to not impair the value of their riparian property, have suffered loss of water use, have an increased risk of flooding, incurred costs for removing docks, boat houses, and seawalls and suffered loss of other quantifiable uses.

(Docket #24 at 7). For his case to be eligible for class treatment, Plaintiff must first show the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4). Further, the Seventh Circuit has "long recognized an implicit requirement under Rule 23" that a class be ascertainable. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). *See also Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012) (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)) ("In addition, a class must be sufficiently definite that its members are ascertainable.").

Plaintiff bears the burden to establish, by a preponderance of the evidence, that each of these requirements is met. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Class certification proceedings should not be "a dress rehearsal for the trial on the merits." *Id.* However, when determining whether a plaintiff can meet his burden, "the court does not presume that all well-pleaded allegations are true for purposes of deciding the certification question." *Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *2 (E.D. Wis. Mar. 29, 2011) (citation omitted). "Rather, it should look beneath the surface of a complaint to conduct the inquiries identified in Rule 23 and exercise the discretion it confers." *Id.* (citations, internal quotations, and alterations omitted). Thus, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation and internal quotations omitted). Because the Court finds that Plaintiff's proposed class, as currently defined, is not ascertainable and that Plaintiff has not met his burden as to the

numerosity of the proposed class, the Court will deny Plaintiff's motion for certification without prejudice.[4]

### 4.1 Ascertainability of Plaintiff's Proposed Class

For a class to be "ascertainable," it must be "defined clearly and based on objective criteria." *Mullins* 795 F.3d at 659. Thus, a plaintiff should ensure that his or her proposed class definition is not vague, so that a court can "identify who will receive notice, who will share in recovery, and who will be bound by a judgment." *Id.* at 659–60. A plaintiff can overcome vagueness by delineating "a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660.

Here, Plaintiff does not reference a particular time frame in his proposed class definition. This is problematic for two reasons. First, in his brief he references a "relevant class period." (Docket #24 at 8). This suggests that Plaintiff meant to include an applicable time frame but forgot to do so. Certainly, this does not clarify, but rather muddles, Plaintiff's intended class definition.

Second, Plaintiff's definition is overbroad because it potentially "contains members who could not have been harmed" by Defendants' actions.[5] *Messner*, 669 F.3d at 824. *See also Kohen v. Pac. Inv. Mgmt. Co.*, 571

---

[4]The Court notes that Plaintiff failed to reply to Defendants' brief in opposition to Plaintiff's motion for class certification, (Docket #27). In their response brief, Defendants argued that Plaintiff had not sufficiently met his burden of proof as to all of Rule 23(a)'s requirements. However, because Plaintiff has not clearly met the first requirement (numerosity) and because his proposed class is not ascertainable, the Court will refrain from considering the remaining requirements. Should Plaintiff renew his motion, the Court does suggest that he ought first consider addressing Defendants' arguments against class certification.

[5]Regarding "numerosity," Plaintiff cites *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1084 (7th Cir. 2014) to support the proposition that because numerosity is determined prior to any consideration of whether any particular class member has

Page 9 of 12
Case 2:19-cv-01747-JPS   Filed 03/22/21   Page 9 of 12   Document 38

F.3d 672, 677 (7th Cir. 2009) ("[I]f the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad."). Plaintiff's definition certainly could include persons who bought property on the Milwaukee River *after* MMSD removed the Estabrook Dam. *See Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 WL 1470855, at *4 (W.D. Wis. May 15, 2007) (noting that plaintiff's proposed class definition was overbroad because it included a group of persons who did not sustain any damages because such persons sold their homes prior to experiencing furnace failure, which was the subject of the litigation). Surely, Plaintiff's limitation to riparian owners "who have relied upon the water level, created and maintained by the Estabrook Dam" attempts to narrow the purported class. Nevertheless, the lack of a relevant period is still problematic. Based on the foregoing, the Court finds that Plaintiff's definition is not ascertainable, as it is both unclear and overbroad.

### 4.2    Numerosity

Plaintiff's class definition states that the class would consist of 47 individuals. To be sure, "[t]he Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." *Armes*, 2011 WL

---

a valid claim, "the question of whether any proposed class members were riparian owners during the relevant class period is irrelevant to the determination of numerosity." (Docket #24 at 8). In *Messner*, 669 F.3d at 824, the Seventh Circuit made clear that the inquiry concerning the validity of potential class members' claims as to numerosity is different than the inquiry as to whether the class is ascertainable. "This distinction is critical for class certification purposes . . . . [i]f a proposed class consists largely. . . of members who are ultimately shown to have suffered no harm, that may not mean that the class was improperly certified but only that the class failed to meet its burden of proof on the merits." *Id.* However, if a class is defined "so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Id.*

1197537, at *2. However, pursuant to FRCP 23(a)(1), Plaintiff must show that "joinder is impracticable." Plaintiff merely says, without more, that the proposed class has 47 members. Defendants call the Court's attention to case law suggesting that joinder would not be impracticable in this case because all the putative class members are within the same district. (Docket #27 at 9) (citing *Markham v. White*, 171 F.R.D. 217, 221 (N.D. Ill. 1997) and *Winokur v. Bell Fed. Sav. & Loan Ass'n*, 16 Fed. R. Serv. 2d 65, 1972 WL 123067, at *2 (N.D. Ill. 1972)). Defendants also argue that because Plaintiff and the proposed class are seeking monetary damages, which are "uniquely individual," "the efficiencies sought to be achieved by a class action process are frustrated." (Docket #27 at 9–10) (citing *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013)).

In his brief, Plaintiff does not point the Court to additional evidence to suggest why joinder is impracticable. The Court only has Plaintiff's affidavit, complaint, and brief, in which he mentions that his proposed class consists of 47 persons. Nor does Plaintiff reply to Defendants' response brief, which raised credible arguments as to why joinder is practicable in this case. Plaintiff had the burden of proof to show by a preponderance of the evidence why his class proposed class is sufficiently numerous. Because he has failed to meet this burden, he cannot satisfy all of FRCP 23(a)'s requirements.

5. **CONCLUSION**

At this juncture, the Court will deny Defendants' motion, (Docket #30), and permit Plaintiff's expert witness's disclosures. However, Defendants may seek to disqualify Plaintiff's expert from testifying by either a motion to disqualify or via a motion in limine. Further, the Court

Page 11 of 12
Case 2:19-cv-01747-JPS   Filed 03/22/21   Page 11 of 12   Document 38

will deny without prejudice Plaintiff's motion for class certification, (Docket #23).

Accordingly,

**IT IS ORDERED** that Defendants' motion to bar Plaintiff's expert (Docket #30) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion to certify a class pursuant to Federal Rule of Civil Procedure 23 (Docket #23) be and the same is hereby **DENIED without prejudice**.

Dated at Milwaukee, Wisconsin, this 22nd day of March, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge