# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRIAN KREUZIGER,

    Plaintiff,

v.

MILWAUKEE COUNTY and
MILWAUKEE METROPOLITAN
SEWERAGE DISTRICT,

    Defendants.

Case No. 19-CV-1747-JPS

**ORDER**

## 1. INTRODUCTION

On November 27, 2019, Plaintiff Brian Kreuziger ("Kreuziger") filed the present action under Title 42, United States Code, Section 1983, alleging takings and inverse condemnation claims against Defendants Milwaukee County (the "County") and Milwaukee Metropolitan Sewerage District ("MMSD") (together "Defendants") in violation of the United States and Wisconsin Constitutions. ECF No. 1. Kreuziger originally brought this suit as a class action but, on March 22, 2021, the Court denied Kreuziger's motion for class certification. ECF No. 38. On March 14, 2022, the parties filed cross-motions for summary judgment as to Kreuziger's claims on his own behalf. ECF Nos. 48, 55. On March 17, 2022, the Court denied both motions without prejudice due to the parties' failure to follow the summary judgment protocols set forth in the Court's July 16, 2021 scheduling order. ECF No. 62.

On May 5, 2022, the parties refiled their cross-motions for summary judgment and, as addressed herein, largely complied with the Court's

protocols. ECF Nos. 68, 72. Both motions are now fully briefed. ECF Nos. 69, 72-1, 73, 76, 77, 78. For the reasons stated herein, the Court will grant Defendants' motion for summary judgment, ECF No. 68, and will deny Kreuziger's motion for partial summary judgment, ECF No. 72. The Court will deny as moot Defendants' motion to quash Kreuziger's expert, ECF No. 52, and Defendants' motion for leave to file a sur-reply brief, ECF No. 79.

2.  **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

3.  **RELEVANT FACTS**

    3.1  **The Parties' Submissions**

The parties submitted a stipulated statement of undisputed material facts. ECF No. 70. Both Kreuziger and Defendants also submitted separate, itemized sets of disputed facts. ECF Nos. 71, 72-2. The parties spill a great deal of ink in their briefing arguing the merits of their respective separate,

itemized sets of disputed facts. One contested issue is whether Kreuziger's separate set of disputed facts complies with the Court's order, ECF No. 66 at 2, to keep any such separate sets of disputed facts to one page. The Court determines that Kreuziger complied with the Court's order, as Civil Local Rule 56(b)(8)(A) allows captions and signature blocks to be excluded for purposes of page length computations. Despite this, the Court notes that any discussion of the parties' separate sets of disputed facts is nothing more than a sideshow. As both parties moved for summary judgment and ostensibly believe their motions to be viable, any separate set of disputed facts must be concededly immaterial. "[I]f any of the disputed facts are material, then summary judgment is not appropriate. In short, simply because an attorney can submit a motion for summary judgment does not mean that they should." ECF No. 66 at 2. Nonetheless, the Court makes the following observations.

Defendants' separate statement of disputed facts, which describes a comparison of the surface water level of the Milwaukee River when the gates of the Dam[1] were open to the surface water level following removal of the Dam, is immaterial to the dispositive question of law addressed herein: whether Kreuziger has a property right to the space between the high-surface water level and the low-surface water level of the portion of the Milwaukee River upon which his property abuts. For the same reason, Kreuziger's separate statement of disputed facts, which describes the same comparison of the Milwaukee River's surface water levels, as well as the post-removal effects on navigation and the ecosystem, is also immaterial. Moreover, at least one of Kreuziger's proffered facts is a legal conclusion

---

[1]As defined *infra*, Section 3.2.

inappropriately disguised as a fact. ECF No. 72-2 at 2 ("The results of the removal of the Dam are contrary to the purposes commonly sanctioned by the public trust doctrine.").

Separately, and notwithstanding the Court's order instructing the parties to omit a facts section from their briefing, both parties "snuck" a facts section into their moving briefs camouflaged as either an "Introduction" or a "Summary Judgment Predicate" section. ECF Nos. 69, 72-1. For his part, the four-and-one-half page statement of facts in Kreuziger's moving brief cites almost exclusively to various affidavits of Kreuziger; such facts go far beyond those stipulated between the parties and even beyond those enumerated in Kreuziger's separate set of disputed facts. This is a clear flout of the Court's order.

In light of all of this, the Court will rely only on the parties' stipulated statement of undisputed material facts, ECF No. 70. This is the more cogent set of facts and most closely follows the Court's directives. The Court will adopt the statement of undisputed material facts with minor, non-substantive edits.

### 3.2 Statement of Undisputed Material Facts

Kreuziger and his wife purchased property in Glendale, Wisconsin ("Kreuziger's Property") in September of 2000. Kreuziger's Property abuts the Milwaukee River and is upstream from the former site of the Estabrook Dam (the "Estabrook Dam" or the "Dam"). The Milwaukee River meets the statutory definition of a navigable waterway. The Estabrook Dam was a public dam, located on the Milwaukee River, and was owned and operated by the County until it was transferred to MMSD for purposes of removing the Dam.

The Public Service Commission issued a permit to the County to construct the Dam on May 26, 1937, and the Dam was built shortly thereafter. When the Dam existed, it had gates that could open and close that could affect the surface water level of the Milwaukee River. Beginning in at least 1986, there were seasonal drawdowns of the Milwaukee River where the gates to the Dam would open and close during the year. In the spring, the gates would close, the river would back up and result in an artificial impoundment upstream of the Dam, raising the surface water levels abutting Kreuziger's Property. The gates would open sometime in the fall through sometime in the spring the following year, during which time the surface water level of the Milwaukee River would recede to lower levels than the surface water levels which occurred without the impediment of closed gates.

The permit for the Dam, issued in May 1937 by the Public Service Commission of Wisconsin, makes no mention of authorization for the seasonal drawdowns where the gates to the Dam would open and close during the year. On July 28, 2009, the Wisconsin Department of Natural Resources (the "DNR") issued an Administrative Order to Repair or Abandon the Dam. The County applied for a permit to transfer the Dam to MMSD, which was issued by the DNR on January 19, 2017. MMSD then applied for a permit to remove the Dam and on October 4, 2017, the DNR issued an Order permitting MMSD to abandon and remove the Dam. MMSD began actual demolition of the Dam on February 13, 2018 and completed substantial removal of the Dam on June 7, 2018.

Since the removal of the Dam, Kreuziger's Property has not been permanently flooded above the ordinary high-water mark that existed at the time the Estabrook Dam was in existence and the gates were closed.

Currently, Kreuziger's Property has a tax assessed value of $190,600 and an estimated fair market value of $206,600.

**4.    ANALYSIS**

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The United States Supreme Court recognizes two forms of takings that are compensable under the Fifth Amendment: (1) "a direct government appropriation or physical invasion of private property," and (2) "government regulation of private property [that is] . . . so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). Wisconsin law is on all fours. *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 785 N.W.2d 409, 417 (Wis. 2010) ("Under the Wisconsin Constitution, two types of governmental conduct can constitute a taking: (1) an actual physical occupation of private property or (2) a restriction that deprives an owner of all, or substantially all, of the beneficial use of his property.") (citations omitted).

Within the latter category, there are three separate tests to determine whether a regulatory taking has occurred, depending on the facts presented: (1) "where [the] government requires an owner to suffer a permanent physical invasion of her property—however minor," (2) "regulations that completely deprive an owner of *all* economically beneficial use of her property," and (3) a balancing of "the economic impact of the regulation on the claimant," with the "character of the governmental action." *Lingle*, 544 U.S. at 538–39 (citations omitted). Further, both the United States Supreme Court and the Wisconsin Supreme Court have "consistently recognized that 'government action outside the owner's property that causes consequential damages within' does not constitute a

taking." *E-L Enters., Inc.*, 785 N.W.2d at 421 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982)).

Defendants allege that the parties' dispute centers on whether a regulatory taking took place and, therefore, falls within the second form of takings. ECF No. 69 at 7. Kreuziger, though citing to the legal standards applicable to both forms of takings, does not appear to take a firm stance on which form he contends took place here, and his Complaint seemingly brings both forms as two separate claims. ECF No. 72-1 at 6; ECF No. 1 at 10–13. Regardless of the applicable form(s) of takings at bar, the parties agree that there are four factors that must be present to maintain *any* claim for an unconstitutional taking: "(1) a property interest exists; (2) the property interest has been taken; (3) the taking was for public use; and (4) the taking was without just compensation." *Adams Outdoor Advertising LP v. City of Madison*, 914 N.W.2d 660, 664–65 (Wis. 2018).

The crux of the parties' dispute is the first element: whether Kreuziger has a property right to the area between the high-surface water level and the low-surface water level of the portion of the Milwaukee River upon which his property abuts. This issue is dispositive as to either form of takings; thus, the Court need not analyze the question of whether the alleged taking here was physical or regulatory. As explained herein, the Court determines that Kreuziger has no such property right. Accordingly, a takings claim will not lie.

In *United States v. Willow River Power Co.*, the United States Supreme Court confronted a legal question remarkably similar to the one presented here. 324 U.S. 499 (1945). There, the Willow River Power Company, a public utility corporation of the State of Wisconsin, operated a hydroelectric plant that relied upon the waters of the St. Croix River to generate energy. *Id.* at

500. In 1938, "in pursuance of a congressional plan to improve navigation," the government constructed the Red Wing Dam, which caused the surface levels of the water accessed by the plant to increase by approximately three feet. *Id.* at 501. The plant was consequently no longer able to produce energy. *Id.* The plant alleged a taking in violation of the Fifth Amendment, claiming that it had a property right in "the difference between [the "natural level" of the river] and the artificial level of the impounded water." *Id.* at 509. The Court disagreed. The alleged right constituted but a

> privilege or a convenience, enjoyed for many years, permissible so long as compatible with navigation interests, but it is not an interest protected by law when it becomes inconsistent with plans authorized by Congress for improvement of navigation.

*Id.* The Court continued, stating that the area below the high-surface water level is "subject always to a dominant servitude in the interests of navigation and its exercise calls for no compensation." *Id.*

Kreuziger argues that *Willow River* is distinguishable on the basis that the removal of the Estabrook Dam did not result in an "improvement of navigation." ECF No. 76 at 7. According to Kreuziger, the lowered water level instead makes it more difficult to navigate the river at the shoreline of Kreuziger's Property. *Id.* ("The removal of the Dam has caused the water level at the shoreline of Plaintiff's residence to recede; uncovering a slimy, boggy, marshy shore . . . and preventing access by recreational boats."). This argument is unavailing. Indeed, the *Willow River* Court expressly addressed this argument in reiterating its holding that the space below the high-surface water level is not a private property right. "Operations of the Government in aid of navigation oftentimes inflict serious damage or inconvenience or *interfere with advantages formerly enjoyed by riparian owners*,

Page 8 of 15
Case 2:19-cv-01747-JPS   Filed 07/29/22   Page 8 of 15   Document 80

but damage alone gives courts no power to require compensation *where there is not an actual taking of property*." *Willow River*, 324 U.S. at 510 (emphasis added).

The holding in *Willow River* is binding upon this Court and is dispositive as to the question of law: whether the area between the high- and low- surface water levels of the Milwaukee River is a property right. *Willow River* teaches that the area is not a private property right, but rather a mere privilege or convenience that must give way to the government's authority to regulate navigable waters. As *Willow River* further instructs, simply because there is no "improvement" in navigation along an individual riparian owner's shoreline does not mean that a government project—here, the DNR's decision under the Wisconsin public trust doctrine to issue the permit to remove the Dam— was not intended to aid navigation overall.

The Wisconsin public trust doctrine derives from that portion of the Wisconsin Constitution that provides that "the state holds the beds of navigable waters in trust for public use." *ABKA Ltd. P'ship v. Wis. Dep't of Nat. Res.*, 635 N.W.2d 168, 177 (Wis. Ct. App. 2001). The public trust doctrine is regulated by the legislature and the DNR and is designed to "protect commercial navigation" as well as "protect the public's use of navigable waters for purely recreational and nonmonetary purposes." *Id.* In enforcing the public trust doctrine, the legislature and the DNR must consider such factors as "the wish to preserve the natural beauty of [Wisconsin's] navigable waters, to obtain the fullest public use of these waters, including but not limited to navigation, and to provide for the convenience of riparian owners." *Id.* Additional factors for the legislature's and the DNR's consideration include "maintaining the safe and healthful conditions of the

water, protecting spawning grounds and aquatic life, controlling the placement of structures and land uses, preserving shore cover and natural beauty, and promoting the general attractiveness and character of the community environment." *Id.*

The legislature has passed statutes pursuant to the Wisconsin public trust doctrine that vest the DNR with the authority to "regulate and control the level and flow of water in all navigable waters" with the aim to "protect life, health, property, property values, and economic values." Wis. Stat. § 31.02(1). Pursuant to that grant of authority, the DNR "may investigate and determine all reasonable methods of construction, operation, maintenance, and equipment for any dam so as to conserve and protect all public rights in navigable waters and so as to protect life, health and property." Wis. Stat. § 31.02. Indeed, dams may not be removed or altered without the DNR first issuing a permit for the same. Wis. Stat. § 31.185(1). As part of the statutory scheme governing the issuance of permits for the removal or alteration of dams, the DNR must, *inter alia*, investigate the permit, including evidence offered by the applicant and any respondents, make findings of fact and conclusions of law, and issue an order on the permit. Wis. Stat. § 31.06. Such an order may then be challenged under Chapter 227 of the Wisconsin statutes, which prescribes the method to seek review of an agency decision.

On the record before it, there is nothing demonstrating to the Court that the DNR did not abide by the prescribed statutory process when it investigated and approved the permit to remove the Estabrook Dam. Thus, the DNR acted within its authority to regulate navigable waters and, under the guidance of *Willow River*, the "privilege or convenience" of a higher shore level that Kreuziger enjoyed at times during years past must give way

to this authority. *See Protect Our Parks, Inc. v. Buttigieg*, No. 21-2449, 2022 WL 2376716, at *6 (7th Cir. July 1, 2022) (when "agencies considered the proper factors . . . their decision is entitled to deference") (citations omitted). At any rate, the DNR is not a party to this case and any challenge to its order issuing the permit to remove the Dam must proceed through the proper channels, which are discussed *infra*. Regarding the arguments presently before the Court, *Willow River* instructs that, because the subject area is not a private property right, the exercise of the DNR's authority "calls for no compensation" under the Fifth Amendment. 324 U.S. at 509.

Wisconsin case law holds similarly to *Willow River*. A riparian owner has an absolute property right to the area above the high-surface water level. *Ill. Steel Co. v. Bilot*, 84 N.W. 855, 856 (Wis. 1900). And, under the public trust doctrine, the State of Wisconsin holds the waters under the low-surface water level in trust for the public. *ABKA*, 635 N.W.2d at 177. Although not a takings case, *Doemel v. Jantz* addresses the issue of whether a riparian owner's property right extends to the low-surface water level or stops at the high-surface water level. 193 N.W.393, 394 (Wis. 1923). There, the Wisconsin Supreme Court held that, "as to the strip between ordinary high and low water marks, the title of the riparian owner [i]s only a qualified title," and is "subject to the trust under and pursuant to which the state has title for the benefit of the public for the purposes of navigation and incidents thereto belonging." *Id.* at 398. In other words, as in *Willow River*, a riparian owner enjoys the privilege of the area between the high- and low-surface water levels of a navigable waterway, subject to the government's authority to regulate it for navigation. *See also Mayer v. Grueber*, 138 N.W.2d 197, 202 (Wis. 1965) ("The title of the riparian owner is, however, a qualified one, subject to the paramount interest of the state.").

Kreuziger hinges his argument on the Wisconsin Supreme Court's holding in *Smith v. Youmans*, 70 N.W. 1115 (Wis. 1897). There, the plaintiff-riparian owner brought suit against a fellow riparian owner to restrain the latter, who owned a dam, from lowering the water levels of the lake upon which both owners' properties abutted. *Id.* at 1115. The court held that the defendant-riparian owner must be so restrained because the plaintiff had a property right in the high-surface water levels. *Id.* at 1116. While seemingly on point, this argument misses the mark. In *Willow River*, decided after *Youmans*, the United States Supreme Court explicitly addressed the difference between property rights in water levels *as between two equal riparian owners* and property rights in water levels *as between one riparian owner and the government*:

> Whatever rights may be as between equals such as riparian owners, they are not the measure of riparian rights on a navigable stream relative to the function of the Government in improving navigation. Where these interests conflict they are not to be reconciled as between equals, but the private interest must give way to a superior right, or perhaps it would be more accurate to say that as against the Government such private interest is not a right at all.

324 U.S. at 510. *Youmans* is thus inapposite. Moreover, in addition to pre-dating *Willow River*, *Youmans* also pre-dated the codification of the public trust doctrine in 1915, which granted the DNR and the legislature the exclusive authority to regulate navigable waters. Wis. Stat. § 31.02.

Kreuziger next argues that Wisconsin courts construe the word "taken" from the Wisconsin Constitution broadly to "include cases in which the access to abutting premises is obstructed," though Kreuziger stops short of applying this legal principle to the facts of this case. ECF No. 78 at 9 (quoting *Damkoehler v. Milwaukee*, 101 N.W. 706, 708 (Wis. 1904)).

Nonetheless, *Damkoehler* too is inapposite as it deals with a private property right, which the Court has determined is not present here, as well as "actual appropriation" of that right. *Id.* at 708. There, a highway improvement project caused damage to an abutting landowner, but it was not the damage that was dispositive for the court in determining a taking took place; it was the fact that the land subsided and "f[e]ll into the street," which amounted to "an actual appropriation of the soil." *Id.* No such appropriation of any private property has occurred here.

Finally, Kreuziger argues that, in the alternative to a property right to the area between the high- and low- surface water levels, he has rights to the area as a member of the public under the public trust doctrine. ECF No. 72-1 at 7. Specifically, Kreuziger argues that his public rights to "boating, swimming, fishing, hunting, and preserving scenic beauty" have been violated by Defendants' removal of the Dam. *Id.* at 7–9 (quoting *Movrich v. Lobermeier*, 905 N.W.2d 807, 814 (Wis. 2018) ("The public rights protected under the public trust doctrine include boating, swimming, fishing, hunting, and preserving scenic beauty.")). Kreuziger contends that such public rights under the public trust doctrine were "taken" because the DNR issued the permit that allowed Defendants to "orchestrate[] the removal of the Dam to avoid the cost of repairing the Dam." ECF No. 78 at 15.

Although Kreuziger seemingly acknowledges this maxim of the public trust doctrine, the Court finds it prudent to remind Kreuziger that "[t]he public trust doctrine *does not convey private property rights*." *Movrich*, 905 N.W.2d at 815 (emphasis added). Both the Fifth Amendment of the United States Constitution and Article I, Section 13 of the Wisconsin Constitution apply expressly to *only private property*. U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just

compensation."); Wis. Const. art. I, sec. 13 (titled "Private property for public use."). Consequently, a takings claim is the incorrect vehicle to bring arguments regarding deprivation of public rights under the public trust doctrine. Kreuziger should have recognized as much through a close read of his proffered case law. *See, e.g.*, ECF No. 78 at 13 (citing *Rock-Koshkonong Lake Dist. v. State Dep't of Nat. Res.*, 833 N.W.2d 800, 804–10 (Wis. 2013)). *Rock-Koshkonong* analyzes efforts, under the public trust doctrine, to appeal a DNR decision regarding the surface water levels of navigable waters, as affected by dams. The process the parties employed to pursue such a claim against the DNR (which, as mentioned *supra*, is not a party to this case) was governed by Chapter 227 of the Wisconsin statutes for administrative procedure and review—not the takings clauses of the United States and Wisconsin Constitutions.

This case presents the Court with a narrow legal question: whether the area between the high- and low- surface water levels of a navigable waterway upon which a riparian owner's property abuts is a property right. The Court has reviewed binding United States Supreme Court precedent, as well as Wisconsin case law in lockstep, and answers the question in the negative. Because a private property right is a required element of Kreuziger's claims, the Court is constrained to dismiss this action with prejudice.

5.   **CONCLUSION**

For the reasons explained above, the Court grants Defendants' motion for summary judgment, ECF No. 68, and denies Kreuziger's motion for summary judgment, ECF No. 72. Kreuziger's claims are dismissed with prejudice. The Court denies as moot Defendants' motion to quash

Kreuziger's expert, ECF No. 52, and Defendants' motion for leave to file a sur-reply, ECF No. 79.

Accordingly,

**IT IS ORDERED** that Defendants Milwaukee County and Milwaukee Metropolitan Sewerage District's motion to quash Plaintiff Brian Kreuziger's expert, ECF No. 52, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants Milwaukee County and Milwaukee Metropolitan Sewerage District's motion for leave to file a sur-reply, ECF No. 79, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants Milwaukee County and Milwaukee Metropolitan Sewerage District's motion for summary judgment, ECF No. 68, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff Brian Kreuziger's motion for partial summary judgment, ECF No. 72, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice.**

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of July, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge